UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

In Re:                                              )
                                                    )        Case No. 18-10341-KKS
Brian Elsmore                                       )
Mercedes Elsmore                                    )
       Debtors.
_____/

### TRUSTEE'S APPLICATION FOR AUTHORITY AND APPROVAL TO EMPLOY MCCOY ANDERSON, A MEMBER OF GATOR HOMES REALTY, AND APPROVE LISTING AGREEMENT FOR SALE OF REAL PROPERTY

Theresa Bender, the Chapter 7 Trustee herein, pursuant to 11 U.S.C. §327, respectfully states:

1. The Applicant is the duly qualified and acting Chapter 7 Trustee of the bankruptcy estate of Brian Elsmore & Mercedes Elsmore.

2. McCoy Anderson, a member of GATOR HOMES REALTY, (jointly referred to hereafter as "Local Listing Broker") has the expertise and knowledge to assist the Chapter 7 trustee with the listing and sale of real property located at 4025 NORTHWEST 35TH STREET GAINESVILLE, FL 32605, legally described as follows:

   CITY/MUNI/TWP:GAINESVILLE SEC/TWN/RNG/MER:SEC 23 TWN 09S RNG 19E REPLAT OF LOTS 1-5 7 8 19-36 & 39-43 OF SABLE CHASE CLUSTER SUBD PHASE I PB P-97 LOT 25 OR 2906/1013 MAP REF:QTR SEC 3445

   hereinafter referred to as the "Real Property".

3. The Debtors have not declared the Real Property as exempt.

4. The Chapter 7 Trustee desire to employ Local Listing Broker to provide professional services on behalf of this bankruptcy estate for the listing and sale of the Real Property identified hereinabove, in which the above-named Debtor holds an interest. The Local Listing Broker

   is requesting a commission of two percent (2%) of the gross sale proceeds. All fees and expenses will be presented to the Court for approval prior to payment.

5. Attached hereto as Exhibit "A" is the duly executed and verified statement on behalf of the Local Listing Broker that their employees and members are disinterested persons, as the term is used in the Bankruptcy Code, do not hold an interest adverse to the bankruptcy estate, is not aware of any connection with the Debtors, creditors, any other party in interest, their respective attorneys or accountants, the United States Trustee or any person employed in the Office of the United States Trustee and understand there is a continuing duty to disclose any such adverse interest.

6. Notice of this Application is being served upon the Office of the United States Trustee, Debtors' counsel, Debtors and all parties of interest in this matter.

7. Attached hereto as Exhibit "B" is a copy of the Listing Agreement and the Chapter 7 Trustee requests that the Court approve this Agreement, which the Chapter 7 Trustee has executed on behalf of this bankruptcy estate.

8. BK Global Real Estate Services ("BK Global") has been retained by the Chapter 7 Trustee and BK Global has agreed to fully cooperate with Local Listing Broker, and to be paid the real estate commission agreed to by the Secured Creditor.

9. Mr. Cooper claims a mortgage interest in and to the Real Property known as 4025 NORTHWEST 35TH STREET GAINESVILLE, FL 32605 and has consented to the sale of the Real Property subject to their security interest.

WHEREFORE, the Trustee prays the Court enter an Order approving and authorizing the employment of McCoy Anderson, a member of GATOR HOMES REALTY, to perform professional services on behalf of this bankruptcy estate, for the listing and sale of the Real Property known as 4025

NORTHWEST 35TH STREET GAINESVILLE, FL 32605, in which the Debtor holds an ownership interest; and for such other and further relief as the Court deems necessary.

| | |
|---|---|
| 5/11/19 | /s/ Theresa M. Bender<br>THERESA M. BENDER<br>CHAPTER 7 TRUSTEE<br>Theresa M. Bender, P.A.<br>Post Office Box 14557<br>Tallahassee, FL  32317<br>PH:  (850) 205-7777<br>FL. Bar # 0749486<br>Tmbenderch7@gmail.com |

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA

In re:                                                    Case No. 18-10341
                                                          Chapter 7
**Brian Elsmore**
**Mercedes Elsmore**

_____Debtors_____ /

## AFFIDAVIT OF MCCOY ANDERSON IN SUPPORT OF APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND GATOR HOMES REALTY TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. § 327, 328 AND 330

STATE OF FLORIDA            )
                            )
COUNTY OF Alachua           )

McCoy Anderson, being duly sworn, says:

1. I am a real estate agent duly licensed by the State of Florida.

2. I am an agent of GATOR HOMES REALTY a Florida Corporation, with corporate offices located at 21727 SE 69th Ave Hawthorne, FL 32640 ("Listing Agent").

3. I am familiar with the Application to Retain GATOR HOMES REALTY, filed by the Trustee ("Application") and the property described therein.

4. I believe that I am experienced and qualified to represent the Trustee in connection with the marketing and sale of the real property located at 4025 NORTHWEST 35TH STREET GAINESVILLE, FL 32605 (the "Property").

5. GATOR HOMES REALTY has agreed to accept employment pursuant to the terms and conditions set forth in the Application and the proposed commission structure. Based upon my experience and knowledge of the real estate market, I believe that the commission structure proposed to be paid to Listing Agent does not exceed customary commissions in the applicable geographical area and are reasonable for the type of employment proposed.

1

6. Neither I nor any member of GATOR HOMES REALTY hold or represent any interest adverse to the estate with respect to the matters for which we are to be employed and we are disinterested persons within the meaning of 11 U.S.C. § 101(14), as required by § 327(a).

7. To the best of my information and belief, neither I nor the other members of this firm have any connection with the Debtors, their creditors, or any other party in interest or their respective attorneys or accountants, the U. S. Trustee, or any person employed in the office of the U.S. Trustee, as required by Rule 2014 of the Federal Rules of Bankruptcy procedure except as set forth below.

8. I represent no interest adverse to the Debtors or its estate in the matters upon which I am to be engaged.

FURTHER AFFIANT SAYETH NAUGHT.

_____
McCoy Anderson of
GATOR HOMES REALTY

The foregoing instrument was sworn to and subscribed before me this 7th day of March, 2019, by McCoy Anderson who provided Florida drivers license

NOTARY PUBLIC

_Brenda Gatson_
Notary Public, State of Florida

Brenda Gatson
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF934918
Expires 11/14/2019

Brenda Gatson
Type, Stamp, or Print Name as Commissioned

2

# Exclusive Right of Sale Listing Agreement

 FloridaRealtors®

1  This Exclusive Right of Sale Listing Agreement ("Agreement") is between
2* _Theresa Bender, BK Trustee for the estate of Briani Mercedes Elsmore_ ("Seller")
3* and _Gator Homes Realty_ ("Broker").

4  **1. Authority to Sell Property:** **Seller** gives **Broker** the EXCLUSIVE RIGHT TO SELL the real and personal
5   property (collectively "Property") described below, at the price and terms described below, beginning
6* _____ and terminating at 11:59 p.m. on _____ ("Termination Date"). Upon
7   full execution of a contract for sale and purchase of the Property, all rights and obligations of this Agreement will
8   automatically extend through the date of the actual closing of the sales contract. **Seller** and **Broker** acknowledge
9   that this Agreement does not guarantee a sale. This Property will be offered to any person without regard to race,
10  color, religion, sex, handicap, familial status, national origin, or any other factor protected by federal, state, or local
11  law. **Seller** certifies and represents that she/he/it is legally entitled to convey the Property and all improvements.

12 **2. Description of Property:**
13*   **(a) Street Address:** 4025 NORTHWEST 35TH STREET GAINESVILLE, FL 32605
14
15*   **Legal Description:** REPLAT OF LOTS 1-5 7 8 19-36 &39-43 OF SABLE CHASE CLUSTER SUBD PHASE 1
16*   PB P-97 LOT 25 OR 2906/1013           ☐ See Attachment _____

17*   **(b) Personal Property, including appliances:** _____
18*   _____ ☐ See Attachment _____

19    **(c) Occupancy:**
20*   Property ☐ is  ☒ is not currently occupied by a tenant. If occupied, the lease term expires _____.

21 **3. Price and Terms:** The property is offered for sale on the following terms or on other terms acceptable to **Seller**:
22*   **(a) Price:** $225,000.00
23*   **(b) Financing Terms:** ☒ Cash ☒ Conventional ☐ VA ☐ FHA ☐ Other (specify) _____
24*      ☐ **Seller Financing: Seller** will hold a purchase money mortgage in the amount of $_____
25*      with the following terms: _____
26*      ☐ Assumption of Existing Mortgage: Buyer may assume existing mortgage for $_____ plus
27*      an assumption fee of $_____. The mortgage is for a term of _____ years beginning in
28*      _____, at an interest rate of _____% ☐ fixed ☐ variable (describe) _____.
29*      Lender approval of assumption ☐ is required ☐ is not required ☐ unknown. **Notice to Seller:** (1) You may
30       remain liable for an assumed mortgage for a number of years after the Property is sold. Check with your
31       lender to determine the extent of your liability. **Seller** will ensure that all mortgage payments and required
32       escrow deposits are current at the time of closing and will convey the escrow deposit to the buyer at closing.
33       (2) Extensive regulations affect **Seller** financed transactions. It is beyond the scope of a real estate licensee's
34       authority to determine whether the terms of your **Seller** financing agreement comply with all applicable laws or
35       whether you must be registered and/or licensed as a loan originator before offering **Seller** financing. You are
36       advised to consult with a legal or mortgage professional to make this determination.
37*   **(c) Seller Expenses: Seller** will pay mortgage discount or other closing costs not to exceed _____% of the
38       purchase price and any other expenses **Seller** agrees to pay in connection with a transaction.

39 **4. Broker Obligations: Broker** agrees to make diligent and continued efforts to sell the Property until a sales
40    contract is pending on the Property.

41 **5. Multiple Listing Service:** Placing the Property in a multiple listing service (the "MLS") is beneficial to **Seller**
42    because the Property will be exposed to a large number of potential buyers. As a MLS participant, **Broker** is
43    obligated to timely deliver this listing to the MLS. This listing will be promptly published in the MLS unless **Seller**
44    directs **Broker** otherwise in writing. **Seller** authorizes **Broker** to report to the MLS this listing information and price,
45    terms, and financing information on any resulting sale for use by authorized Board / Association members and
46    MLS participants and subscribers unless **Seller** directs **Broker** otherwise in writing.

Seller (_____) (_____) and Broker/Sales Associate (_____) (_____) acknowledge receipt of a copy of this page, which is Page 1 of 4.
ERS-17tb   Rev 6/17                                                                                              ©2017 Florida Realtors®
Serial#: 027721-500155-4649689                                                                                   formsimplicity

6. **Broker Authority: Seller** authorizes **Broker** to:
   (a) Advertise the Property as **Broker** deems advisable including advertising the Property on the Internet unless limited in (6)(a)(i) or (6)(a)(ii) below.
   **(Seller opt-out) (Check one if applicable)**
   (i) [X] Display the Property on the Internet except the street address.
   (ii) [ ] **Seller** does not authorize **Broker** to display the Property on the Internet.
   **Seller** understands and acknowledges that if **Seller** selects option (ii), consumers who search for listings on the Internet will not see information about the Property in response to their search.
   _____/_____ **Initials of Seller**
   (b) Place appropriate transaction signs on the Property, including "For Sale" signs and "Sold" signs (once **Seller** signs a sales contract) and use **Seller's** name in connection with marketing or advertising the Property.
   (c) Obtain information relating to the present mortgage(s) on the Property.
   (d) Provide objective comparative market analysis information to potential buyers.
   (e) **(Check if applicable)** [X] Use a lock box system to show and access the Property. A lock box does not ensure the Property's security. **Seller** is advised to secure or remove valuables. **Seller** agrees that the lock box is for **Seller's** benefit and releases **Broker**, persons working through **Broker**, and **Broker's** local Realtor Board / Association from all liability and responsibility in connection with any damage or loss that occurs.
   [ ] Withhold verbal offers. [ ] Withhold all offers once **Seller** accepts a sales contract for the Property.
   (f) Act as a transaction broker.
   (g) **Virtual Office Websites:** Some real estate brokerages offer real estate brokerage services online. These websites are referred to as Virtual Office Websites ("VOWs"). An automated estimate of market value or reviews and comments about a property may be displayed in conjunction with a property on some VOWs. Anyone who registers on a VOW may gain access to such automated valuations or comments and reviews about any property displayed on a VOW. Unless limited below, a VOW may display automated valuations or comments and reviews about this Property.
   [X] **Seller** does not authorize an automated estimate of the market value of the listing (or a hyperlink to such estimate) to be displayed in immediate conjunction with the listing of this Property.
   [X] **Seller** does not authorize third parties to write comments or reviews about the listing of the Property (or display a hyperlink to such comments or reviews) in immediate conjunction with the listing of this Property.

7. **Seller Obligations:** In consideration of **Broker's** obligations, **Seller** agrees to:
   (a) Cooperate with **Broker** in carrying out the purpose of this Agreement, including referring immediately to **Broker** all inquiries regarding the Property's transfer, whether by purchase or any other means of transfer.
   (b) Provide **Broker** with keys to the Property and make the Property available for **Broker** to show during reasonable times.
   (c) Inform **Broker** before leasing, mortgaging, or otherwise encumbering the Property.
   (d) Indemnify **Broker** and hold **Broker** harmless from losses, damages, costs, and expenses of any nature, including attorney's fees, and from liability to any person, that **Broker** incurs because of (1) **Seller's** negligence, representations, misrepresentations, actions, or inactions; (2) the use of a lock box; (3) the existence of undisclosed material facts about the Property; or (4) a court or arbitration decision that a broker who was not compensated in connection with a transaction is entitled to compensation from **Broker**. This clause will survive **Broker's** performance and the transfer of title.
   (e) Perform any act reasonably necessary to comply with FIRPTA (Section 1445 of the Internal Revenue Code).
   (f) Make all legally required disclosures, including all facts that materially affect the Property's value and are not readily observable or known by the buyer. **Seller** certifies and represents that **Seller** knows of no such material facts (local government building code violations, unobservable defects, etc.) other than the following:
   _____
   **Seller** will immediately inform **Broker** of any material facts that arise after signing this Agreement.
   (g) Consult appropriate professionals for related legal, tax, property condition, environmental, foreign reporting requirements, and other specialized advice.

8. **Compensation: Seller** will compensate **Broker** as specified below for procuring a buyer who is ready, willing, and able to purchase the Property or any interest in the Property on the terms of this Agreement or on any other terms acceptable to **Seller**. **Seller** will pay **Broker** as follows (plus applicable sales tax):
   (a) _____ 6% of the total purchase price plus $_____ OR $_____, no later than the date of closing specified in the sales contract. However, closing is not a prerequisite for **Broker's** fee being earned.
   (b) _____ ($ or %) of the consideration paid for an option, at the time an option is created. If the option is exercised, **Seller** will pay **Broker** the Paragraph 8(a) fee, less the amount **Broker** received under this subparagraph.

Seller (\_\_\_\_\_) (\_\_\_\_\_) and Broker/Sales Associate (*AO*) (\_\_\_\_\_) acknowledge receipt of a copy of this page, which is Page 2 of 4.
ERS-17tb   Rev 6/17                                                                                                               ©2017 Florida Realtors®
Serial#: 027721-500155-4649689
formsimplicity

105*     **(c)** _____ ($ or %) of gross lease value as a leasing fee, on the date **Seller** enters into a lease or
106     agreement to lease, whichever is earlier. This fee is not due if the Property is or becomes the subject of a
107     contract granting an exclusive right to lease the Property.
108    **(d) Broker's** fee is due in the following circumstances: (1) If any interest in the Property is transferred, whether by
109     sale, lease, exchange, governmental action, bankruptcy, or any other means of transfer, regardless of whether
110     the buyer is secured by **Seller, Broker,** or any other person. (2) If **Seller** refuses or fails to sign an offer at the
111     price and terms stated in this Agreement, defaults on an executed sales contract, or agrees with a buyer to
112*     cancel an executed sales contract. (3) If, within _____ days after Termination Date ("Protection Period"),
113     **Seller** transfers or contracts to transfer the Property or any interest in the Property to any prospects with whom
114     **Seller, Broker,** or any real estate licensee communicated regarding the Property before Termination Date.
115     However, no fee will be due **Broker** if the Property is relisted after Termination Date and sold through another
116     broker.
117*    **(e) Retained Deposits:** As consideration for **Broker's** services, **Broker** is entitled to receive _____% (50% if
118     left blank) of all deposits that **Seller** retains as liquidated damages for a buyer's default in a transaction, not to
119     exceed the Paragraph 8(a) fee.

120 **9. Cooperation with and Compensation to Other Brokers: Notice to Seller:** The buyer's broker, even if
121   compensated by **Seller** or **Broker**, may represent the interests of the buyer. **Broker's** office policy is to cooperate
122   with all other brokers except when not in **Seller's** best interest and to offer compensation in the amount of
123*   [X] \_\_\_\_2% of the purchase price or $_____ to a single agent for the buyer; [X] \_\_\_\_2% of the
124*   purchase price or $2.00_____ to a transaction broker for the buyer; and [ ] \_\_\_\_2% of the purchase
125*   price or $_____ to a broker who has no brokerage relationship with the buyer.
126*   [ ] None of the above. (If this is checked, the Property cannot be placed in the MLS.)

127 **10. Brokerage Relationship: Broker** will act as a transaction broker. **Broker** will deal honestly and fairly; will account
128   for all funds; will use skill, care, and diligence in the transaction; will disclose all known facts that materially affect
129   the value of the residential property which are not readily observable to the buyer; will present all offers and
130   counteroffers in a timely manner unless directed otherwise in writing; and will have limited confidentiality with
131   **Seller** unless waived in writing.

132 **11. Conditional Termination:** At **Seller's** request, **Broker** may agree to conditionally terminate this Agreement. If
133   **Broker** agrees to conditional termination, **Seller** must sign a withdrawal agreement, reimburse **Broker** for all direct
134*   expenses incurred in marketing the Property, and pay a cancellation fee of $_____ plus
135   applicable sales tax. **Broker** may void the conditional termination, and **Seller** will pay the fee stated in Paragraph
136   8(a) less the cancellation fee if **Seller** transfers or contracts to transfer the Property or any interest in the Property
137   during the time period from the date of conditional termination to Termination Date and Protection Period, if
138   applicable.

139 **12. Dispute Resolution:** This Agreement will be construed under Florida law. All controversies, claims, and other
140   matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be
141   settled by first attempting mediation under the rules of the American Mediation Association or other mediator
142   agreed upon by the parties. If litigation arises out of this Agreement, the prevailing party will be entitled to recover
143   reasonable attorney's fees and costs, unless the parties agree that disputes will be settled by arbitration as follows:
144*   **Arbitration:** By initialing in the space provided, **Seller** (\_\_\_\_) (\_\_\_\_), Sales Associate (\_\_\_\_), and **Broker** (\_\_\_\_)
145   agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which
146   the Property is located in accordance with the rules of the American Arbitration Association or other arbitrator
147   agreed upon by the parties. Each party to any arbitration (or litigation to enforce the arbitration provision of this
148   Agreement or an arbitration award) will pay its own fees, costs, and expenses, including attorney's fees, and will
149   equally split the arbitrator's fees and administrative fees of arbitration.

150 **13. Miscellaneous:** This Agreement is binding on **Seller's** and **Broker's** heirs, personal representatives,
151   administrators, successors, and assigns. **Broker** may assign this Agreement to another listing office. This
152   Agreement is the entire agreement between **Seller** and **Broker**. No prior or present agreements or representations
153   will be binding on **Seller** or **Broker** unless included in this Agreement. Electronic signatures are acceptable and
154   will be binding. Signatures, initials, and modifications communicated by facsimile will be considered as originals.
155   The term "buyer" as used in this Agreement includes buyers, tenants, exchangors, optionees, and other categories
156   of potential or actual transferees.

Seller (\_\_\_\_) (\_\_\_\_) and Broker/Sales Associate (\_\_\_\_) (\_\_\_\_) acknowledge receipt of a copy of this page, which is Page 3 of 4.

ERS-17tb  Rev 6/17                                               ©2017 Florida Realtors®
Serial#: 027721-500155-4649689                                 formsimplicity

157* **14. Additional Terms:** *This Listing Agreement and any sale of the property is subject to and conditioned upon court approval by the United States Bankruptcy Court.*

158 LISTING COMMISSION BREAK DOWN

159 •! 2% to Broker

160 •! 2% to Local Listing Broker

161 •! 2% to Buyers Broker

162

163

164

165

166

167

168

169

170* **Seller's Signature:** _____ Date: _____

171* Home Telephone: _____ Work Telephone: _____ Facsimile: _____

172* Address: _____

173* Email Address: _____

174* **Seller's Signature:** _____ Date: _____

175* Home Telephone: _____ Work Telephone: _____ Facsimile: _____

176* Address: _____

177* Email Address: _____

178* **Authorized Sales Associate or Broker:** *[signature]* Date: 4/11/2019

179* Brokerage Firm Name: Gator Homes Realty   Telephone: _____

180* Address: _____

181* Copy returned to **Seller** on _____ by ☐ email ☐ facsimile ☐ mail ☐ personal delivery.

Florida REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

Seller (____) (____) and Broker/Sales Associate (____) (____) acknowledge receipt of a copy of this page, which is Page 4 of 4.

ERS-17tb   Rev 6/17   ©2017 Florida Realtors®
Serial#: 027721-500155-4649689